OPINION
Pursuant to a plea agreement, Gregory Melvin pled no contest in the Montgomery County Court of Common Pleas to one count of involuntary manslaughter, eleven counts of aggravated robbery, ten counts of kidnapping, and twenty-one firearm specifications. He was found guilty of each offense and was sentenced accordingly. The pleas followed the trial court's denial of Melvin's motion to suppress statements he had made to the police and photographic lineups used by the police in their investigation. Melvin appeals from the denial of his motion to suppress.
In the late morning on June 24, 2000, Dayton Police responded to a robbery alarm at Falb's Restaurant. We can glean from the record that Melvin and his accomplices robbed the restaurant and were fired upon by its owner, who killed one of the accomplices and injured Melvin. The evidence established that, when the first officer arrived on the scene, several citizens directed his attention to Melvin, who was running away from the restaurant. The officer apprehended Melvin and discovered that he had a gunshot wound to the shoulder. Melvin was then transported to Miami Valley Hospital under guard. In the emergency room, Melvin asked several times, "How's my buddy?" When a police officer asked whom Melvin was talking about, Melvin stated that he did not want to talk. Later, after Melvin had been informed of his Miranda rights, he was questioned about what had happened. He stated that "[t]he shit got all fucked up" at Falb's and, when asked who had been with him, stated that he "[couldn't] give up his dude." Melvin then asked to speak with a lawyer. At other times while he was under guard, Melvin asked police officers whether "that man was right for shooting us?" and whether he could watch the news.
The police constructed separate photo lineups including Melvin and two of his accomplices. The restaurant owner and two patrons identified Melvin and the other suspects from these lineups. Each photo lineup contained six pictures and, on each one, the suspect's picture was in the upper left-hand position.
Melvin filed a motion to suppress his statements to the police and the photo identifications. After an extensive hearing, the trial court overruled the motion to suppress. Melvin then entered into a plea agreement as discussed supra. He was sentenced to ten years for involuntary manslaughter and to three years for each count of aggravated robbery, to be served concurrently with each other but consecutively to the involuntary manslaughter sentence. He was also sentenced to three years for each count of kidnapping, to be served concurrently with each other but consecutively to the involuntary manslaughter and aggravated robbery sentences. He received an additional three year sentence on the twenty-one firearm specifications.
Melvin raises two assignments of error on appeal.
 I. THE LOWER COURT PREJUDICIALLY ERRED IN REFUSING TO EXCLUDE STATEMENTS MADE BY APPELLANT TO DETECTIVE MARTIN, AFTER THE GIVING OF MIRANDA, IN VIOLATION OF APPELLANT'S DUE PROCESS RIGHTS.
 Melvin argues that his statements to police officers were not voluntarily made because he had been shot, he was under the effects of pain and pain medication, and he had not been allowed to use the telephone at the time the statements were made. We note that the trial court found that several of Melvin's statements to police were volunteered by Melvin and did not result from interrogation. Melvin does not challenge the trial court's conclusion with regard to these statements. Rather, he challenges only those statements made in response to questions by police officers.
Melvin claims that he could not have knowingly, intelligently, and voluntarily waived his Miranda rights because he was in pain and had been treated with opiates. Nothing in Melvin's medical records, however, indicates that hospital personnel observed confusion or disorientation. Moreover, Melvin asked questions that indicated an understanding of what was happening around him. After Melvin was read his rights, he was also asked a series of questions to test his degree of orientation, such as what day it was and who was president. He answered most of these questions correctly, although he was unable to provide specific information about his educational background. Based on the totality of the circumstances, the trial court concluded that the medications administered to Melvin had not caused him "to be mentally confused in any substantial way" when he answered any of the police officers' questions. The trial court further concluded that, even if Melvin had been impaired by the medication, his statements would not have been involuntary because the impairment was not caused by the police.
The trial court reasonably concluded that Melvin had not been impaired in any significant way by the pain medications which had been administered to him when he was questioned by the police. As such, the trial court properly refused to suppress these statements. We need not reach the question of whether Melvin's statements could have been considered voluntary if he had been suffering ill-effects from the medications at the time of questioning, notwithstanding the fact that the police had not administered the medications, and we will not address that issue.
The first assignment of error is overruled.
 II. THE LOWER COURT ERRED IN REFUSING TO SUPPRESS THE PRETRIAL IDENTIFICATIONS IN VIOLATION OF APPELLANT'S DUE PROCESS RIGHTS.
 Melvin argues that the use of three photo lineups, each of which contained a suspect in the upper left-hand position, was "potentially suggestive." Although Melvin concedes that "it does not appear from the testimony of the three witnesses that their identification[s] from the photo spreads were necessarily tainted by the procedure used," he asks that we suppress the evidence to prevent the use of this procedure in the future.
All of the witnesses testified that their identifications of the suspects had been unaffected by the positioning of the photos and that they had identified the suspects based upon their involvement with the robbery and not their positioning in the photo lineup. Thus, as Melvin concedes, he was not prejudiced by the similarities in the lineups. Moreover, the police officer who prepared the photo lineups testified that he had used a computer program that randomly positioned the suspects' pictures in the lineup. In light of the police officer's uncontradicted testimony that the positioning of the suspects' photos in the photo lineups had been determined at random by a computer, we see no reason to try to deter this conduct in the future.
The second assignment of error is overruled.
The judgment of the trial court will be affirmed.
BROGAN, J. and YOUNG, J., concur.